**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**DELTA DIVISION**

**JIMMIE CARTER SMITH, INDIVIDUALLY**
**AND IN HIS CAPACITY AS ADMINISTRATOR**
**OF THE ESTATE OF JIMMIE LEE CARTER**
**AND NINA WILLIS CARTER, INDIVIDUALLY**
**AND WIFE AND HEIR AT LAW OF JIMMY LEE**
**CARTER, DECEASED,**                                    **PLAINTIFFS,**

**VS.**                                    **CIVIL ACTION NO. 2:06CV212-P-A**

**CANADIAN NATIONAL / ILLINOIS CENTRAL**
**RAILROAD, A/K/A CANADIAN NATIONAL**
**RAILROAD, A/K/A ILLINOIS CENTRAL**
**RAILROAD; JOHN DINNING, INDIVIDUALLY**
**AND IN HIS OFFICIAL CAPACITY AS AN**
**EMPLOYEE OF ILLINOIS CENTRAL RAILROAD,**                    **DEFENDANTS.**

### MEMORANDUM OPINION

These matters come before the court upon Plaintiffs' Motion to Remand to State Court [7-1] and Defendant Illinois Central Railroad's motion to strike the plaintiffs' reply brief [15-1] and motion to strike Exhibit C to plaintiff's reply brief [26-1]. After due consideration of the motions and the responses filed thereto the court is prepared to rule.

### I. FACTUAL BACKGROUND

On or about August 30, 2004 the plaintiffs filed the instant action in the Circuit Court of Tallahatchie County, Mississippi levying claims of negligence and gross negligence against Illinois Central Railroad and its employee John Dinning, in his individual and official capacity as an employee of Illinois Central. The Complaint also asserts a claim of vicarious liability against "Defendant, Canadian National / Illinois Central Railroad for acts and omissions attributable to

Defendant, Canadian National / Illinois Central aka Canadian National Railroad, aka Illinios Central Railroad , John Downing [Dinning], individually and in his official capacity as an employee of Illinois Central Railroad, and John Doe I thru X." Complaint, ¶ 30. The plaintiffs' claims arise from an incident on January 31, 2004 when Jimmie Lee Carter, while driving over the railroad crossing on Burrough Street in Glendora, Mississippi, was struck and killed by an oncoming train after his "vehicle became entrenched in grooves by negligent maintenance of real property owned and maintained by Canadian National / Illinois Central Railroad Company." Complaint, ¶ 13.

On December 18, 2006, Defendant Illinois Central removed this action to federal court, asserting diversity jurisdiction based on their argument that the plaintiffs improperly joined individual defendant John Dinning, a Mississippi resident, since there is no reasonable possibility of individual recovery against him.

On January 15, 2007 the plaintiffs filed the instant motion to remand in which they argue that Illinois Central has not met its burden in demonstrating that there is no reasonable possibility of recovery against John Dinning.

Illinois Central filed a motion to strike the plaintiffs' reply to the defendants' response to the plaintiffs' motion to remand which should be granted. The defendants filed their response to the plaintiffs' motion to remand on February 1, 2007. The plaintiffs had five business days plus three calendar days to file their reply. Thus, the deadline to file the reply was on February 12, 2007. Without filing a motion for an extension of time, the plaintiffs instead filed their reply on February 22, 2007 – some ten days after the deadline. Therefore, pursuant to Local Rule 7.2(D), the plaintiffs' reply should be stricken as untimely. Since the entire reply is stricken, Illinois Central's motion to strike Exhibit C to the plaintiffs' reply should be denied as moot.

## II. DISCUSSION

### A. Improper Joinder

The burden in this case is upon the defendants to persuade the Court of fraudulent, or improper, joinder. *Hart v. Bayer Corp.*, 199 F.3d 239, 246 (5th Cir. 2000) This burden is a heavy one. *Id*. Furthermore, when dealing with an improper joinder claim the court should not focus on who will ultimately prevail in the action. *Reed v. American General Life & Accident Ins. Co.*, 192 F.Supp.2d 641 (N.D. Miss. 2002). When moving for remand the plaintiff's burden is "much lighter" than that necessary with summary judgment. *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 550 (5th Cir. 1981).

There are two ways in which the defendants can establish fraudulent joinder: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003) (citing *Griggs v. State Farm Lloyds*, 181 F.3d 694, 698 (5th Cir. 1999)). Since there is no dispute that the resident defendant is indeed a resident of Mississippi, the second test applies in the instant case.

With regard to the second test, the Fifth Circuit in *Smallwood v. Illinois Central Railroad Company*, 385 F.3d 568, 573 (5th Cir. (Miss.) 2004) (en banc) wrote:

> [T]he test for fraudulent joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant. To reduce possible confusion, we adopt this phrasing of the required proof and reject all others, whether the others appear to describe the same standard or not.

*Id.* (citing *Travis*, 326 F.3d at 646-7).

The Fifth Circuit in *Hart* wrote that they "have cautioned against 'pretrying a case to determine removal jurisdiction,' [and have stated] that fraudulent joinder claims can be resolved by

'piercing the pleadings' and considering summary judgment-type evidence such as affidavits and deposition testimony." 199 F.3d at 246-247 (quoting *Carriere v. Sears, Roebuck and Co.*, 893 F.2d 98, 100 (5th Cir. 1990)). However, "the court 'must also take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff' and resolve any contested issues of fact and legal ambiguities in the plaintiff's favor." *Hart*, 199 F.3d at 246.

Whether the plaintiffs in the instant case can establish a reasonable basis for a state claim against the resident agent defendants must be tempered by Mississippi law. *Hart*, 199 F.3d at 247. Although "the general rule in Mississippi law is that the defendant-agent incurs no liability for a principal's breach of duty ... an agent for a disclosed principal can be held personally liable for his own tortious acts committed within the scope of his employment." *Id.* (citing *Wheeler v. Frito-Lay, Inc.*, 743 F.Supp. 483 (S.D. Miss. 1990) (interpreting Mississippi law)). Moreover, an agent is "subject to personal liability when he 'directly participates in or authorizes the commission of a tort.'" *Id.* (quoting *Mississippi Printing Co., Inc. v. Maris, West & Baker, Inc.*, 492 So.2d 977, 978 (Miss. 1986)). At the same time, however, "individual liability may not be predicated merely on [the agent's] connection to the corporation but must have as its foundation 'individual wrongdoing.'" *Id.* (quoting *Turner v. Wilson*, 620 So.2d 545, 548 (Miss. 1993)). Finally, according to *Hart*, "[t]he thrust of the general rule is that the officer [or agent] to be held personally liable must have some direct, personal participation in the tort, as where the defendant was the 'guiding spirit' behind the wrongful conduct ... or the 'central figure' in the challenged corporate activity.'" *Id.* (quoting *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 173 (5th Cir. 1985)) (parenthetical in original).

Thus, in order to defeat the defendants' fraudulent joinder argument, the plaintiffs in the

instant case must demonstrate the reasonable possibility that the resident agent defendant "directly participated in the commission of a tort." *Hart*, 199 F.3d at 248.

## B. The Mississippi-Resident Defendant John Dinning

In their Complaint, the plaintiffs allege that John Dinning is a "design engineer and regulator for Canadian National / Illinois Central, and in his employment, was directly responsible for the maintenance of the railroad-highway grade crossing 300672J on Burrough Street in Glendora, Mississippi." Complaint, ¶ 5. In further regard to Dinning, the Complaint alleges that at all relevant times the subject crossing "was in disrepair and said disrepair was known by agents and employees of Canadian National / Illinois Central directly responsible for maintaining said real property, said agents and employees including but not limited to Defendant John [Dinning]." Complaint, ¶ 15. Officials from Illinois Central "including John Dinning, had participated in meetings in the later [sic] part of the 1990's (1998) and as recently as March, 2003, in which discussions of previous deaths, and collisions that had taken place at [the crossing and] recommendations regarding [the crossing] were ignored and no action was taken regarding said real property until the death of Jimmie Lee Carter." Complaint, ¶ 18.

Under the claims for negligence, the Complaint states that in addition to Illinois Central, John Dinning "individually and in his official capacity as an employee of Illinois Central Railroad, owed a duty to Jimmie Lee Carter, and other similarly situated, and the general traveling public, to act with reasonable care in operating the train and the property on which [the crossing] sat." Complaint, ¶ 22. "Defendant John Dinning, and John Doe Defendants I thru X, were directly placed on notice regarding the condition of [the crossing.]" Complaint, ¶ 23.

Under the claim for gross negligence, the Complaint alleges that the acts and omissions of

all defendants constituted gross negligence. The Complaint also levies a claim of vicarious liability against Illinois Central, alleging that Illinois Central is vicariously liable for any of the negligence / gross negligence of its employees, including John Dinning.

In their Notice of Removal, Illinois Central denies the Complaint's basic allegation that John Dinning was a design engineer and was directly responsible for maintaining the crossing. Rather, Illinois Central avers through Dinning's affidavit that he is the manager of public works who "acts as a liaison between Defendant Illinois Central and governmental entities such as the Mississippi Department of Transportation, city and county governments." Dinning states that his "obligations are to work with the MDOT in the execution and implementation of MDOT's directives to Illinois Central." Affidavit of John Dinning at 2. Defendants aver that Dinning had no responsibility for the inspection or maintenance of Illinois Central's railroad crossings and that he had no authority to unilaterally make decisions regarding the installation of additional warning devices at any crossing in Mississippi.

In their motion to remand, the plaintiffs argue that Dinning's affidavit "clearly shows that he was a material party in the sequence of events that give rise to this lawsuit." Brief at 3. The plaintiff writes: "Although Plaintiff disputes the actions and fulfillment of responsibilities by John Dinning [as stated in his affidavit], clearly, he is (1) a party with firsthand direct knowledge of all information regarding this case; (2) a party directly related to the intricacies of the signal in question in this case, and as [sic] indicated in his own affidavit a central character directly related to the installment of measurements to improve the" crossing. *Id*. at 4. In other words, the plaintiffs concentrate on Dinning as the representative of Illinois Central who participated in the negotiations between the Town of Glendora, the railroad, and MDOT regarding improvements at the subject

railroad crossing. They point to Dinning's affidavit wherein he stated in pertinent part:

> Prior to the time of this accident, I had been working with the Mississippi Department of Transportation and the town of Glendora on a proposed project involving the use of federal funds. ... Once Illinois Central had received authorization from the MDOT, Illinois Central would install active warning devices consisting of flasher light signals and gates at the new crossing created by the new public road. ... On February 2, 2004, I received authorization from MDOT to proceed with the signalization of the new crossing once the new road was constructed by the Town of Glendora. I understand the accident involved in this suit occurred on January 31, 2004. Neither prior to that date or [sic] on that date had Illinois Central been directed to install any signals by the Mississippi Department of Transportation.

Affidavit of John Dinning, 2-4. The plaintiffs argue further in their motion to remand that "[i]t is abundantly clear that Mr. Dinning was not joined to this lawsuit in an effort to defeat diversity, but because he was at least held out as a central figure in the case as alleged by Plaintiffs." Brief at 12.

In their responses to the motion to remand, the defendants argue that there is no reasonable possibility of recovery against Dinning individually for negligence or gross negligence in the condition of the crossing since he was not responsible for maintenance of the crossing and the plaintiffs have no basis for arguing otherwise. Even if Dining is "a party with first hand knowledge of all information regarding this case," argues Illinois Central, this statement only shows Dinning's value as a potential witness in this case, not as a party defendant. Illinois Central argues that the plaintiffs have cited no authority under which Dinning may be held liable under state law, nor have they shown any breach of duty owed by Dinning – rather, the plaintiffs are attempting to hold Dinning liable for actions over which he has no authority.

Illinois Central also argues that the claims against Dinning are preempted by federal law. More specifically, the defendant writes: "Each and every claim raised by Plaintiffs against Defendant Dinning regarding the adequacy of the warning devices at the Burrough Street Crossing in Glendora,

Mississippi are also barred by the doctrine of federal preemption." Illinois Central's Response Brief at 13. Illinois Central cites *CSX Transportation, Inc. v. Easterwood*, 507 U.S. 658, 670 (1993) for the proposition that where 23 C.F.R. § 646.214 is applicable, state tort law is preempted because § 646.214(b) displaces both state and private decision-making authority by establishing federal law that certain warning devices must be installed. The critical factor in determining whether § 646.214(b) is applicable is whether federal funds participated in the installing of the warning devices at the crossing. Illinois Central argues that the crossbuck signs at the subject crossing were upgraded with federal funds. Illinois Central argues further that not only are the plaintiffs' claims against Dinning preempted, but also those against Illinois Central. Specifically, Illinois Central writes: "Since the federal funds had been approved for this project, and the notice to proceed had been issued by MDOT, any claim that the devices in existence at that time, and any claim that Illinois Central negligently delayed in implementing the crossing upgrade program, is preempted." Response Brief at 14 (citing *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 645-46 (5th Cir. 2005)).

Thus, Illinois Central posits that Dinning was improperly joined to defeat diversity jurisdiction – *i.e.* because the plaintiffs have no reasonable possibility of recovery against Dinning – given that: (1) the plaintiffs have cited no authority stating that Dinning as the manager of public works for the railroad can be liable for negligence since he was not in charge of railroad crossing maintenance or upgrades; and (2) a negligence claim against Dinning for failure to upgrade the crossing is preempted by federal law.

As was the situation in *Dew v. Illinois Central Gulf Railroad Company*, 621 F.Supp. 153 (S.D. Miss. 1985), cited by Illinois Central in this matter, there is a question of fact of regarding what role Dinning played in the sequence of events leading to the incident in question. The plaintiffs argue

via deposition testimony of the mayor of Glendora that Dinning was viewed as a representative of Illinois Central in bringing about an upgrade of the subject crossing and a major player in that decision. Thus, the plaintiffs allege that but for Dinning's alleged negligence in those negotiations, at least in part, the subject crossing would have been upgraded, thereby preventing the incident. Illinois Central counters with affidavits that Dinning was not in charge of maintaining or upgrading the crossing and that he was a mere liaison between Illinois Central, his employer, and governmental entities whose "obligations are to work with the MDOT in the execution and implementation of MDOT's directives to Illinois Central." As was recognized in *Dew*, the court in deciding whether to remand a case must "resolve any contested issues of fact and legal ambiguities in the plaintiff's favor." *Hart*, 199 F.3d at 246. After doing so, this court concludes that the defendant has not met its burden in demonstrating that "there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood*, 385 F.3d at 573.

Furthermore and without regard to whether Illinois Central is correct about their preemption argument, Illinois Central's preemption argument is a defense that affects not only Dinning but also Illinois Central. As the Fifth Circuit held in *Smallwood*, a case similar to that at bar: "[W]hen a nonresident defendant's showing that there is no reasonable basis for predicting that state law would allow recovery against an in-state defendant equally disposes of all defendants, there is no improper joinder of the in-state defendant. In such a situation, the entire suit must be remanded to state court." 385 F.3d at 571. This ruling is often known as the common claim or defense doctrine.

Like the case at bar, the situation in *Smallwood* involved a fatal accident at a railroad crossing. In that case, the plaintiff sued Illinois Central and the Mississippi Department of Transportation. Illinois Central removed the case, arguing that MDOT had been improperly joined

because there was no reasonable possibility of recovery against MDOT given that federal law preempted the plaintiff's claims. The Fifth Circuit reversed *en banc* reasoning that Illinois Central's preemption defense went to all defendants and therefore required remand since deciding preemption for MDOT would require decision on the merits with regard to the non-resident defendant as well – *i.e.*, a common defense. The Fifth Circuit concluded remand was proper even though federal preemption was involved, noting that "[t]he railroad could not remove on the basis of federal question jurisdiction because the only federal question appeared as a defense." 385 F.3d at 575-76. Although the federal law cited by Illinois Central in this case, 23 C.F.R. § 646.214, is different than that cited in *Smallwood*, the result is the same given that the allegation of federal question jurisdiction regards a defense and nothing in *CSX Transportation, Inc. v. Easterwood*, *supra*, indicates that 23 C.F.R. § 646.214 completely preempts the plaintiffs' suit requiring exclusive jurisdiction in federal court.

## III. CONCLUSION

For the reasons discussed above, the court concludes that Plaintiffs' Motion to Remand to State Court [7-1] should be granted, Defendant Illinois Central Railroad's motion to strike the plaintiffs' reply brief [15-1] should also be granted, and Illinois Central's motion to strike Exhibit C to plaintiff's reply brief [26-1] should be denied as moot. Accordingly, an Order shall issue forthwith,

**THIS DAY** of March 26, 2007.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE